Filed 1/22/24  P. v. Curtis CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C098053 |
| Plaintiff and Respondent, | (Super. Ct. No. 22FE015523) |
| v. | |
| RAEMEL CURTIS, | |
| Defendant and Appellant. | |

Defendant Raemel Curtis appeals a judgment following his conviction by jury of petty theft, second degree robbery, and being a felon in possession of a firearm, and the trial court's determination that he had suffered a prior strike conviction for which he received an aggregate prison sentence of six years.  Defendant's contention on appeal is that his attorney rendered ineffective assistance of counsel by failing to:  (1) bring a motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 to strike his prior strike and (2) request the trial court stay his $300 restitution fine in accordance with *People v. Dueñas* (2019) 30 Cal.App.5th 1157.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The People's second amended information charged defendant with felony theft (Pen. Code, § 487, subd. (c); count one);[1] second degree robbery (§ 211; count two); and being a felon in possession of a firearm (§ 29800, subd. (a)(1); count three). The information further alleged several aggravating sentencing factors (Cal. Rules of Court, rule 4.421)[2] and that defendant had suffered a prior strike conviction (§§ 667 subds. (b)-(i), 1170.12) as well as a prior serious felony conviction (§ 667, subd. (a)).

At defendant's jury trial, the People presented evidence that on July 25, 2022, the victim, S.S.,[3] drove to Bank of America to deposit money for his son-in-law's convenience store. S.S. also withdrew $1,100 in change, which he placed in a bag before returning to the store. Upon returning to the store, S.S. parked, got out of his car, and started walking towards the store. As he did, a man came running up behind him and stole the bag with the money. S.S. reported the theft and provided three digits of the license plate number for the black car used by the thief to flee. Police later utilized unique characteristics of the car from the convenience store video footage and the three license plate numbers to identify a matching Mercedes belonging to defendant. Video surveillance from Bank of America showed a black sedan parked at the bank while S.S. was in the bank. After S.S. left, the sedan appeared to follow him.

On August 24, 2022, another victim, M.A., was sitting in her parked car in a parking lot outside of a dental office, with the door open talking on her cell phone. A man came up, grabbed the phone, and yanked M.A.'s purse away leaving marks on her arm. The man then fled in a black car. Following the theft, M.A. found three phones

---

[1] Undesignated statutory references are to the Penal Code.

[2] Undesignated rule references are to the California Rules of Court.

[3] We use the victim's initials in accordance with rule 8.90(b)(4).

near her car, including her own. M.A.'s purse had $260 in cash, as well as her credit and bank cards.

Later that day, M.A.'s bank cards were found in the moonroof of defendant's Mercedes during a traffic stop, but the officer was not aware of the theft and let defendant leave following the traffic stop. Information from a tracker placed on defendant's Mercedes following the convenience store theft showed defendant's Mercedes at the location of M.A.'s robbery when it occurred. Four of M.A.'s bank cards and other incriminating evidence were later recovered during a subsequent search of defendant's Mercedes.

On September 14, 2022, police executed a search warrant of the address of record for defendant's black Mercedes. Therein they found S.S.'s bag, and inside that bag was a loaded Glock pistol, drum magazine, and set of digital scales. Defendant's then-fiancée owned a Glock pistol, which she kept in a locked box in her bedroom closet. She did not put her gun in the bag in her storage shed and confirmed the Glock presented in court belonged to her.

Following the close of evidence, defendant agreed all aggravating factors would be tried before the judge at the bifurcated trial. Thereafter, the jury found defendant guilty of petty theft, second degree robbery, and being a felon in possession of a firearm. The matter of the aggravating factors and defendant's prior serious felony and prior strike convictions would be determined the same day as sentencing.

On March 3, 2023, the parties waived the preparation of a probation report, and the trial court found true the allegations that defendant had suffered a prior strike and a prior serious felony conviction. The trial court also found true the aggravating allegations that the manner of M.A.'s robbery indicated planning (rule 4.421(a)(8)) and that defendant had served a prior prison term (rule 4.421(b)(3)), but found not true the allegation that defendant engaged in violent conduct indicating a serious danger to society (rule 4.421(b)(1)). The People asked for an aggregate sentence of 16 years four

months, while defendant requested four years (the low term doubled) for the robbery, plus 16 months (one-third the midterm doubled) for the firearm possession. The trial court did not follow either of these requests.

Instead, the trial court noted in light of the purse snatching nature of the robbery, defendant would have received a low term sentence and probation, but for the fact of his prior strike and lengthy prison term he served, which was then followed by the instant thefts. Thus, the trial court determined that six years (the midterm doubled) for the robbery, plus a concurrent term of four years (two years doubled) for the firearm possession struck the appropriate balance. The trial court also struck the five-year prior serious felony enhancement, and the trial court declined to impose more time for the petty theft. When informed by the parties that the trial court could not impose a concurrent term for the firearm count because of the prior strike, the trial court alternatively struck the prior strike as to the firearm count only. Thus, defendant received an aggregate prison sentence of six years with credit for 171 actual days, plus 26 conduct days for a total of 197 days' custody credit.

The trial court also imposed a $300 restitution fine (§ 1202.4), a $300 suspended parole revocation restitution fine (§ 1202.45), and ordered restitution to the victims in an amount to be determined. In light of defendant's request to "waive any non-mandatory fees, given [defendant's] indigent status," the trial court struck the $30 conviction assessment (Gov. Code, § 70373) and $40 court operations assessment (§ 1465.8) fees that had just been imposed per count. Defendant timely appealed.

## DISCUSSION

"To show ineffective assistance of counsel, defendant has the burden of proving that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different." (*People v. Kelly* (1992) 1 Cal.4th 495, 519-520.) " '[E]ven "debatable trial tactics" do not "constitute a

4

deprivation of the effective assistance of counsel." [Citation.]' " (*People v. Weaver* (2001) 26 Cal.4th 876, 928.)

### A. *The Prior Strike*

Defendant complains he received ineffective assistance of counsel because had his attorney requested the trial court strike his prior strike conviction, there is a reasonable probability the trial court would have granted this request in light of his age at the time of the strike conviction and that this conviction was remote. We disagree.

The trial court has wide discretion in determining whether to strike a strike under *Romero* and must decide "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes] scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

We see nothing in the record establishing that, had defendant requested the trial court strike his prior strike for all purposes, it is reasonably probable that the result would have been different. (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694.) On the contrary, the trial court carefully considered its options in determining the appropriate sentence for defendant. In so doing, the trial court exercised its discretion to strike the five-year prior felony enhancement and to strike the prior strike as to count three only so that the trial court could impose a concurrent sentence on that count and reach the desired sentence. Thereafter, the trial court imposed the six-year aggregate prison term it believed was warranted in light of the circumstances. Thus, there is nothing in the record establishing that it is reasonably probable that the trial court would have stricken the prior strike for all purposes had defendant made such a request. (*Id.* at p. 694.) Accordingly, this claim fails.

*B. The Restitution Fine*

Defendant argues he received ineffective assistance of counsel because his counsel failed to request the staying of the restitution fine imposed at sentencing in accordance with *People v. Dueñas, supra*, 30 Cal.App.5th 1157. Defendant reasons that because the trial court accepted his request to waive all nonmandatory fees in light of his indigence, there was no reason to not also request the staying of the $300 restitution fine.

Defendant's claim hinges on the validity of the analysis in *People v. Dueñas, supra*, 30 Cal.App.5th 1157, finding due process required the staying of a restitution fine unless and until the People have demonstrated a defendant's present ability to pay. (*Id*. at p. 1164.) The Courts of Appeal are split as to whether *Dueñas* was correctly decided. Our Supreme Court must resolve this question, having granted review in *People v. Kopp* (2019) 38 Cal.App.5th 47, review granted November 13, 2019, S257844, which concluded due process requires the trial court to conduct an ability to pay hearing before imposing assessments but not restitution fines. (*Id*. at pp. 95-96.)

In the meantime, we join the court in *People v. Hicks* (2019) 40 Cal.App.5th 320, review granted November 26, 2019, S258946, and several other courts in concluding that the principles of due process do not require determination of a defendant's present ability to pay before imposing the fine at issue in this proceeding. (*People v. Cota* (2020) 45 Cal.App.5th 786, 794-795; *People v. Kingston* (2019) 41 Cal.App.5th 272, 279; *People v. Aviles* (2019) 39 Cal.App.5th 1055, 1069; *People v. Caceres* (2019) 39 Cal.App.5th 917, 928.)

Defendant therefore has not shown he received ineffective assistance because of his counsel's failure to request the trial court stay his restitution fine under *Dueñas*. Failure to assert a meritless position does not demonstrate ineffective assistance of counsel. (*People v. Kipp* (1998) 18 Cal.4th 349, 377.)

## DISPOSITION

The judgment is affirmed.

           /s/           
EARL, P. J.

I concur:

      /s/        
BOULWARE EURIE, J.

I concur; as to Part B of the Discussion, I concur in the result:

      /s/        
MAURO, J.